# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CR-12-70-RAW |
| | ) | |
| MICHAEL SALAS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The Defendant Michael Salas was indicted for possession of methamphetamine with intent to distribute pursuant to 21 U.S.C. § 841. The charge resulted from discovery of approximately 20 pounds of methamphetamine in the trunk of his car during a traffic stop. The Defendant filed a Motion to Suppress Evidence and Brief in Support [Docket No. 37], which the District Judge referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), and a suppression hearing was held on October 18, 2012. For the reasons set forth below, the Motion to Suppress Evidence should be denied.

### A. Factual Background

A deputy sheriff stopped the Defendant westbound on I-40 in Muskogee County on August 16, 2012. The deputy informed the Defendant he was pulled over for crossing the fog line and asked if he had been drinking. The Defendant indicated he was tired but had not had anything to drink. The deputy took the Defendant to his patrol car to write him a warning and contacted dispatch to check on the Defendant's driver's license, any

outstanding warrants, and the vehicle's plates. Upon questioning the Defendant revealed that he was unemployed, had driven from Dallas, Texas to Fort Smith, Arkansas that morning to gamble, and was on his way back to Dallas. The deputy wrote the warning, gave it to the Defendant and indicated he was free to leave, but asked the Defendant to answer a few more questions after he exited the patrol car. The Defendant indicated his assent, and the deputy asked if he had any illegal items in his vehicle, including marijuana, cocaine, heroin, methamphetamine, large sums of money or any contraband. The deputy testified he observed an increase in the Defendant's heart rate (evidenced by a rapidly pulsating carotid artery), a look of worry on the Defendant's face, and labored speech. The deputy then asked for consent to search the vehicle, which the Defendant granted, and the deputy proceeded to find several baggies of methamphetamine (approximately 20 pounds in the aggregate) in a suitcase in the trunk of the car. The deputy thereupon arrested the Defendant.

### B. Analysis

The Defendant argues that the methamphetamine was illegally seized and should be suppressed because the initial traffic stop of his vehicle was illegal. *See, e. g., United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007) ("Since a traffic stop itself is a seizure, the Fourth Amendment requires the stop to be justified at its inception and reasonably limited in scope."), *citing United States v. Holt*, 264 F.3d 1215, 1220 (10th

Cir. 2001).[1]  Defendant's argument is without merit, and the Defendant's Motion to Suppress should therefore be denied.

"[A] traffic stop 'is reasonable under the Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Ramstad*, 308 F.3d 1139, 1144 (10th Cir. 2002) [internal quotations omitted], *quoting United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999).  The Defendant in this case was stopped for an alleged violation of 47 Okla. Stat. § 11-309(1), which requires that vehicles be driven "as nearly as practicable entirely within a single lane." Citing *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996), the Defendant contends that the deputy lacked probable cause to believe the statute in question had been violated, and that the traffic stop was therefore illegal at its inception.  The undersigned Magistrate Judge disagrees.

In *Gregory*, the Tenth Circuit determined that "an isolated incident of a vehicle crossing into the emergency lane of a roadway" did not violate a Utah statute similar to the one at issue here where "[t]he road was winding, the terrain mountainous and the weather condition was windy." 79 F.3d at 978.  Thus, "a vehicle may weave slightly without violating the law if there are adverse conditions (high winds, sharp curves, damaged pavement)" because of the "as nearly as practical" language in the statute.

---

[1] The Defendant also argues that his consent to search the vehicle was illegally obtained because the initial traffic stop was illegal.  Since the undersigned finds that the traffic stop was legal, the Defendant's consent argument need not be addressed.

*United States v. Vazquez*, 555 F.3d 923, 928 (10th Cir. 2009). "However, decisions like *Gregory* do not establish an absolute standard or bright-line rule regarding what conduct constitutes a violation of statutes like [47 Okla. Stat. § 11-309], but instead highlight the need to analyze objectively all the surrounding facts and circumstances to determine whether the officer had the probable cause necessary to justify the stop." *Ozbirn,* 189 F.3d at 1198, *citing Gregory,* 79 F.3d at 980. Absent unusual conditions such as those in the *Gregory* case, "when police officers observe a vehicle depart from a lane, they have reasonable suspicion to stop the vehicle." *Vazquez*, 555 F.3d at 928, *citing United States v. Alvarado*, 430 F.3d 1305, 1308 (10th Cir. 2005).

The driver in *Gregory* went two feet over the right boundary line one time on a winding road in mountainous terrain on a windy day. 79 F.3d at 978. The Defendant in this case went over the fog line *twice*. The first incident occurred following a slight curve coming off a bridge, but the second occurred on a relatively straight stretch of highway. The video of the traffic stop indicates that it was windy at the time, but the deputy testified that the wind was not so strong as to affect the course of travel of a passenger vehicle such as the Ford Taurus that the Defendant was driving. *See Vazquez*, 555 F.3d at 928 ("Although Mr. Vazquez blamed the wind and small tires for his car's admitted lateral movements, the court could reasonably credit [Officer] Malcom's testimony that it was not windy at the time of the stop and that in any event Mr. Vazquez's 2003 Honda Civic was a low-profile compact car unlikely to be affected by the wind."). On at least one occasion, the Defendant's vehicle went *halfway across* the fog line, *i. e.*, far more than the single two-foot crossing in *Gregory*.

The Defendant contends that any lane violation resulted from the deputy's method of pursuit, but the traffic stop video does not support this contention. Although the video did not record violations observed by the deputy, it did record the deputy following the Defendant for a period of time and actually passing the Defendant when he slowed prior to the traffic stop. The deputy did not appear to drive erratically or otherwise cause the Defendant to have any difficulty maintaining his lane. Indeed, the only reason given by the Defendant for crossing the fog line was that he was tired. *See, e.g., United States v. Cline*, 349 F.3d 1276, 1287, fn. 8 (10th Cir. 2003) (adopting the district court's findings regarding the role of the officer in the commission of the traffic violation that "Cline is not heard giving any excuse to Trooper Grassl that he swerved in response to the patrol car. Nor does the court have any basis for saying that a reasonable driver would be distracted by the mere presence of a patrol car operated in a normal manner as to drift one to two feet off the road and nearly strike a bridge railing."). There is no evidence here to suggest that the deputy's operation of his vehicle had anything to do with the Defendant's crossing of the fog line.

This might well be a different case if the Defendant had swerved two feet across the fog line only once after the curve coming off the bridge. But the circumstances of this case, in particular the second incident on a straight, flat highway (and the crossing halfway across the fog line on the first) gave the deputy a reasonable suspicion (if not probable cause to believe) that the Defendant had violated 47 Okla. Stat. § 11-309(1). *See, Vazquez*, 555 F.3d at 928 ("We made it clear in *United States v. Cline*, 349 F.3d 1276, 1287 (10th Cir. 2003), that even a *single* instance of drifting may violate a statute

like the one at issue here.") [emphasis added]; *United States v. Dunn*, 1998 WL 8227, at *2 (10th Cir. Jan. 12, 1998) (holding that the officer had probable cause for the traffic stop when on a windy day he observed the defendant cross the line marking the edge of the lane a single time and the road was straight with a slight grade but not winding or mountainous) [unpublished opinion]. The traffic stop was therefore lawful, *see, e. g., United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) ("An initial traffic stop is valid under the Fourth Amendment . . . if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."), *citing United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir. 1995), *cert. denied*, 518 U.S. 1007 (1996), as was the consent-based search of the Defendant's vehicle during the stop, and the methamphetamine seized during the search need not be suppressed.

## C. Conclusion

The undersigned Magistrate Judge PROPOSES the findings of fact set forth above and RECOMMENDS that the Defendant Michael Salas's Motion to Suppress Evidence and Brief in Support [Docket No. 37] should be in all things DENIED. If there are any objections to this Report and Recommendation, they must be filed within fourteen (14) days of service hereof. *See* 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED this 1st day of November, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma